Good morning, ladies and gentlemen. Our first case for argument this morning is United States v. McGhee. Mr. Beals. Good morning, Your Honors. May it please the Court, Counsel. My name is Bart Beals. I'm here on behalf of Mr. McGhee. There are several points that are mentioned in my brief. First, I would like to reserve five minutes for rebuttal time, so I would just like to touch on a few points prior to reserving my rebuttal time. As the Court is aware regarding the circumstances of the case from the brief, there are several issues regarding this case that comes out of an investigation that led to some tracking warrants, some tracking devices being placed on my client's vehicle that eventually led to a garbage pull that eventually led to a search warrant. So, to start with the issue regarding the search warrant, specifically regarding the denial of my client's motion, Frank's motion, regarding the search warrant in this case. My client filed a motion, what is referred to as a Frank's motion. Upon filing the Frank's motion in front of the District Court, there was an argument, but there was not a full Frank's hearing where the actual factual information, witnesses and so forth, can go forth for my client to fully vet his claim. Specifically, regarding the tracking warrants that were not issued in accordance with state procedure and that they were affidavits supporting the warrants, quite frankly, were confusing and contradictory. And that ultimately, based on contradictory information that was provided to the Court in an application for the search warrant, that it did not, because it was contradictory, did not amount, did not rise to the level of establishing probable cause. The District Court, there was a motion. The District Court did hear arguments regarding the motion, but the District Court denied a full Frank's motion. It's the position of the defense that in this situation, the District Court committed procedural error by one, allowing the government to supplement its response after my client had filed the Frank's motion, where the government was able to basically characterize the defense's evidence, and then two, without actually having a factual hearing. The District Court was quite strong with the government about the filing of these tracker warrants, correct? Yes. The District Court, according to the transcripts, appeared to be very concerned with the government about how the warrants, the tracker warrants had been filed, the proper procedure, and how it had been filed, and the process by which they went to get the tracker warrants. That is correct. Now, also, I'd like to just pivot a little bit to another one of the issues that are in my brief regarding the court. When it denied the motion to suppress from the transcripts, it's, from reading the transcripts, it appears that the government didn't have a search warrant, and they went on to the, I guess you could characterize the curtilage of the property of Mr. McGee, and they went and pulled his trash, and then they looked in his trash, based on information or things they received from his trash, that was also part of what they used in order to get the search warrant that ultimately led to the instant case. Now, I'm sure the government will have a different opinion as to whether it's the curtilage or not, but from reading the transcripts, it appears that the garbage was, it wasn't as if it was, this was abandoned property or this was out on a public causeway, and based on that, this was a warrantless search, and obviously there was no, there's no question that this was not a search pursuant to a consent, nor was it a search pursuant to a search warrant, so based on that, I would also argue that the court erred by denying my client's motion to suppress, and then prior to, because I know I'm under five minutes, I just want to just briefly touch on the argument regarding the 922-G. I understand that the 922-G issue is in flux in front of, in, actually across the country. While it is true that this issue was not raised at the time, you know, at the time of contemporaneous, it was raised later with a motion to dismiss, but in light of the circumstances and as far as the issue of 922-G being in flux as applied, and I believe there's even been a few district courts have even ruled that it's facially unconstitutional in light of the plain language of the Second Amendment, I would also argue that the court erred by denying that motion. So, if there aren't any other questions, I would like to save the rest of my three minutes for rebuttal. Sergeant of Counsel. Thank you. Mr. Simpson. Good morning. Your Honors, may it please the Court, Scott Simpson on behalf of the United States. Before getting into the issues here, I just want to step back for a moment and look at the scope of this defendant's criminal activities. Usually when we have a drug case, the defendant has been dealing one or two drugs typically, but in this case, the jury convicted this defendant of possession with intent to distribute methamphetamine, powder cocaine, crack cocaine, heroin, and fentanyl, and of course, firearms or fences, and the was Mr. McGee's third federal drug conviction. So, turning to the issues, we haven't considered yet an issue that unfortunately we need to address, I believe, and that is a very serious waiver problem. The defendant's opening brief in this appeal listed seven claims, but was only 11 1⁄2 pages long. This court has said that a skeletal or undeveloped argument on the arguments in this brief are certainly skeletal and undeveloped. For example, the entire section challenging the district court's denial of a motion for new trial is three sentences. The section on the constitutionality of the trash pull has two paragraphs of citations and then ends with a two-sentence conclusory argument. And the defendant's appellate brief also does not engage with any of the district court's rationales for its rulings. This kind of thing does not tell this court. One wonders why it took you 64 pages to respond to seven undeveloped arguments. Your Honor, we did not know whether the court would agree with the appeal based on the scarcity of the appellate brief, but because we didn't know how the court would react to the waiver issue, we felt we had to address all of those arguments on the merits. But still, it was difficult. This kind of thing doesn't allow the appellate to fashion a targeted response and doesn't tell this court the basis of the appellant's arguments. So, we believe all of the claims, all of the arguments in this appellate brief have been waived. Although, of course, this court can exercise its discretion to address the merits of any of those claims. No, we don't have any discretion to address waived arguments. We have discretion to address forfeited arguments. And I think that's what you mean when you say waiver. Good point, Your Honor. Good point. Absolutely. So, assuming this court addresses the merits, I tend to focus, I like to focus on the suppression issue and the request for Frank's hearing as defense counsel has done, unless the court has questions on any of the other claims. The affidavit submitted here to the magistrate judge established more than a fair probability that evidence of crime would be found in the subject locations. I'll divide, just to summarize those facts, I'll talk a little bit about facts regarding Mr. McGee's activities in general, and then the evidence, the information in relation to that LaSalle residence in particular that was the focus of the federal warrant. In relation to McGee's activities in general, there were two confidential sources and the affidavit said one of them had been working with the police for some time. Both sources told the police that Mr. McGee was dealing large amounts of drugs, which turned out to be true based on the results of the search. And one of those confidential sources made two controlled purchases from Mr. McGee and that was described in the affidavit. In relation to that LaSalle residence in particular, one of the confidential sources told officers that McGee came from a house on LaSalle when he was delivering drugs. McGee's Facebook page indicated that he was in a dating relationship with a woman named Desiree Stanford and the police found that the LaSalle residence was given as her address. Officers saw McGee coming from the LaSalle residence, including before both of the controlled purchases, and to address this trash pull. They did the trash pull and they found disposable, the trash included disposable gloves and plastic baggies, both of which had cocaine residue. We have a picture on to give the court some perspective in case that picture is hard to understand. The photographer would have been standing with his or her back to the house that we're talking about here at the LaSalle residence. So that's a picture of the backyard and then at the back, the far end of that picture is the fence at the back of that backyard and you can actually see it better in color in the PDF itself. On the other side of that fence you see two trash cans and that's where the trash cans were from which the trash was pulled. In this neighborhood, it's an entire block and of course there are houses on both sides and then you have an alley going down adjacent to the backyards all the way down, all the way down the middle of the block and that's where the trash cans were. Clearly this trash pull didn't have a problem under the Fourth Amendment. And finally the officers secured GPS warrants from state judges and the tracking information showed that the Chevy Malibu registered to Mr. McGee usually stayed at that LaSalle residence overnight. So this is, we submit this easily enough to establish probable cause. Now on the request for Frank's hearing and in talking, Mr. Beals addressed some of these things but really largely since the argument in the brief is so brief, really I'm responding largely to the issues that were discussed below in the three different filings on the suppression issue. In their filings below the defense talked about how the state applications mentioned residences other than the LaSalle residence. That I believe is the source of defense counsel's assertion that was confusing. But the state tracking warrants obviously were meant to seek to put GPS devices, to put a GPS device on a vehicle not to search a residence. Also the state applications referred to residences other than LaSalle because the investigation developed over time and then ultimately focused on the LaSalle house. In the federal affidavit there was also some argument in the district court below that the federal warrant, the federal affidavit was confusing as to what house was being talked about. But it defines the term subject premises as the LaSalle house and it consistently uses that term referring to the LaSalle house and no others. That tracking though on the LaSalle versus the Millman, that's not easy when you're looking. I don't want to leave the impression somehow that that was a direct correlation. I mean that concept in all caps of the premises that was challenging to track, wasn't it? Your Honor, perhaps in light of the state affidavits, if you look first at the state affidavits and you see references to other houses, but we would submit that if you look at the federal affidavit on its face, it talks about subject premises and as long as you remember how subject premises is defined as the LaSalle residence, we would submit that it's clear what it's talking about. And again, in fact, I believe the last of the next to the LaSalle house. Again, the investigation was ongoing to develop more information and finally they were focusing on this house on LaSalle Street. And we recognized that the state warrants should have been filed and as Judge Brennan mentioned earlier, the district court did express concern about that. That was not done when it should have been done. But it was ultimately done and I should point out that once the state warrants were filed, defense counsel conceded that they were valid. So unless the court has any questions on those suppression, Frank's issues or the other claims, we would urge this court to affirm. Thank you. Thank you, Mr. Simpson. Anything further, Mr. Beals? Just briefly, Your Honor, just as to deal with the government's contention of waived or forfeited argument. In the government's brief, they cited United States versus Butler and I believe that the situation here, well, one, I don't believe that the arguments in the appellant brief have been waived or forfeited. Now, effectively what the government is saying is their brief is significantly longer than the appellant's brief. That is correct. But the issue of what they're saying with waiver or forfeited argument, I don't think applies and I believe that even with the case with U.S. v. Butler, where there was a sentencing hearing, the district court explained its reasons for the sentencing hearing, which at the time, I believe that the defense didn't even, didn't object to. And then afterwards, an appeal was filed and it was just basically a mere assertion that the court had committed procedural error without a full explanation as to why the court had committed procedural error in that situation. In this case here, there has been case law that's been cited in each argument and there has been an explanation given in each argument, which would give the government, would pretty much put the government on notice as to what the position of the defense is. So in light of that, Your Honor, I believe that the government, the defense, we're not conceding that there's a forfeiture or waiver issue in this case, unless there are any questions for the court. Thank you. All right. Thank you very much. The case is taken under advisement.